UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*
JAMES M. JANG and                                                 \*
ANNA S. PARK,                                                         \*
                Plaintiffs                         \*
                                                            \*   Civil Action No.
v.                                                                              \*
                                                                             \*
LIBERTY MUTUAL FIRE INSURANCE COMPANY,   \*   August 19, 2015
                Defendant                        \*
                                                                             \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

NOW COME the plaintiffs, James M. Jang and Anna S. Park, by their attorney, Michael D. Parker, Esq., complaining of the defendant, Liberty Mutual Fire Insurance Company, as follows:

## PARTIES

1. The plaintiffs, James M. Jang and Anna S. Park, own the residential property located at 56 Stonefield Trail, South Windsor, Connecticut 06074.

2. The defendant, Liberty Mutual Fire Insurance Company, ("Liberty Mutual"), is an insurance company incorporated under the laws of the Commonwealth of Massachusetts and has a principal place of business at 175 Berkeley Street, Boston, Massachusetts. At all times material to this claim, Liberty Mutual was engaged in the business of writing homeowner's insurance policies and issuing such policies to residents of various states, including residents of the State of Connecticut, as a member of the Liberty Mutual Group.

## JURISDICTION

3. This Honorable Court has subject matter jurisdiction over this matter pursuant to 42 U.S.C. § 1332(a) as this action involves citizens of different states and the amount of controversy exceeds $75,000.00 exclusive of interest and costs.

## GENERAL ALLEGATIONS

4. The plaintiffs purchased the residential property located at 56 Stonefield Trail, South Windsor, Connecticut in June of 2007. The residence was constructed in 1985.

5. The plaintiffs have insured their home at 56 Stonefield Trail at all times since the year 2007 with a Homeowners Policy issued by the defendant.

6. The plaintiffs paid the premium charged by the defendant each year and, without further action on the plaintiffs' part, the subject policy was automatically renewed by the defendant yearly subject to the payment of the related premiums, all of which were timely and satisfactorily paid. A copy of the most recent complete Homeowners Policy issued by the defendant to the plaintiffs is attached hereto, made a part hereof, and marked as Exhibit A.

## COUNT I
### (Breach of Contract)

7. The plaintiffs reallege in this Count I the allegations set forth in paragraphs 1 through 6 above as if the same were herein separately set forth.

8. In March of 2015, the plaintiffs were informed by a prospective buyer's home inspector that there were a series of horizontal and vertical cracks throughout most of the basement walls of their home.

9. The plaintiffs immediately undertook an investigation of this condition, its cause, and the methods of repair by consulting with various contractors and professionals.

10. Through this investigation, the plaintiffs learned that the form of "pattern cracking" found in the basement walls of their home was due to a chemical compound found in certain basement walls constructed in the late 1980s and the early 1990s with concrete most likely from the J.J. Mottes Concrete Company.

11. The aggregate used by the J.J. Mottes Concrete Company in manufacturing the concrete in that particular time period contained a chemical compound which, with its mixture with the water, sand, and cement necessary to form the concrete, began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble.

12. There is no known scientific or engineering method or process which is effective in reversing the deterioration, it continues to advance with or without the presence of visible water.

13. At some point between the date on which the basement walls were poured and the month of March, 2015 the basement walls suffered a substantial impairment to their structural integrity.

14. It is only a question of time until the basement walls of the plaintiffs' home will fall in due to the exterior pressure from the surrounding soil.

15. With the falling in of the basement walls, the entire home will fall into the basement.

16. The plaintiffs first learned of the existence of this substantial impairment in March of 2015 from a local engineer retained due at the request of the prospective buyers and notified the defendant on August 11, 2015 of the condition of their basement walls.

17.     Thereby, the plaintiffs made a timely claim for coverage of the loss in accordance with the terms of the Homeowners Policy and the policies issued during the preceding policy years.

18.     The defendant's claims representative denied the plaintiffs' claim for coverage without any substantive investigation and by way of letter claiming that the Homeowners Policy does not afford coverage for damage caused by "settling or earth movement."  A copy of the denial letter dated August 11, 2015 is attached hereto, made a part hereof, and marked as Exhibit B.

19.     Pursuant to the terms of the Homeowner's Policy, Section I – Property Coverages, Additional Coverages, ¶ 8, as amended by the Special Provisions - Connecticut endorsement, Liberty Mutual agreed to provide coverage for "direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:…(b) Hidden decay;… or (f) Use of defective material or methods in construction, remodeling or renovation."  Exhibit A, form HO 00 03 04 91 page 5 of 16, as amended by form FMHO 3223 02 12, page 2 of 4

20.     The grounds offered by the defendant for the denial of coverage are contrary to the express provisions of the Homeowners Policy.  Exhibit B.

21.     In denying coverage, as alleged, the defendant breached its contractual obligation under the Homeowners Policy, all to the financial loss and damage of the plaintiffs.

22.     Based on the estimates of contractors who have performed replacements to the basement walls of similar structures in the area of the plaintiffs' home, the cost of replacing the basement walls, along with the related restoration of the deck, landscaping, driveway and walks, is expected to be not less than $175,000.00.

## COUNT II
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

23. The plaintiffs reallege in this Count II the allegations set forth in paragraphs 1 through 22 above and paragraphs 37 through 44 below as if the same were herein separately set forth.

24. The plaintiffs submitted their claim for coverage to the defendant on August 11, 2015.

25. The defendant failed to conduct a proper and otherwise sufficient investigation of the insured residence following the claim for coverage of the loss and ultimately denied coverage on the basis that the Homeowners Policy does not cover damage caused by settling.

26. The defendant failed to conduct any inspection by a professional trained or experienced in the types of concrete failure is present in the basement walls of the insured residence.

27. In denying the claim, the defendant ignored the coverage provided for collapse and denied the plaintiffs' claim based upon other policy provisions clearly inapplicable and wholly immaterial to the plaintiffs' claim for coverage.

28. Upon information and belief, the defendant intentionally cited portions of the policy wholly inapplicable to the plaintiffs' claim for coverage knowing full well that the plaintiffs, like most insureds, are unsophisticated with respect to the complex language contained in insurance policies.

29. Upon information and belief, the defendant acted intentionally to mislead the plaintiffs and convince them that the damage suffered to their home was not covered solely to preserve its own assets by avoiding payment of a covered loss.

30. By denying coverage in this manner, the defendant has impeded the plaintiffs' right to receive benefits that they reasonably expected to receive under the contract for homeowner's insurance.

31. The defendant has acted in bad faith and violated the implied covenant of good faith and fair dealing in the performance of its duties by denying the plaintiffs' claim for coverage under the Homeowners Policy.

32. Upon information and belief, and based in part upon those facts alleged in paragraphs 37 through 44 below, the defendant has a general business practice of acting intentionally to mislead its insureds into believing that the collapse of the basement walls of a building caused by hidden decay or by the use of faulty or defective materials or methods of construction is not a covered loss.

33. As a direct result of the defendant's bad faith, the plaintiffs have suffered loss and damages including loss of monies due them pursuant to their contract of insurance, as already set forth herein, as well as related court costs and attorney's fees to bring suit to litigate their claim, along with the loss of interest on liquidated funds due them under said policy of insurance.

### COUNT III
**(Unfair and Deceptive Practices in Violation of the Connecticut Unfair Insurance Practice Act and the Connecticut Unfair Trade Practices Act)**

34. The plaintiffs reallege in this Count III the allegations set forth in paragraphs 1 through 33 above as if the same were herein separately set forth.

35. The defendant is an insurance company licensed and qualified to engage in the business of insurance within the State of Connecticut.

36. The defendant issued a homeowner's insurance policy to the plaintiffs that provides coverage for the collapse of an insured structure caused by hidden decay.

37. The defendant, upon information and belief, participates in the Insurance Services Office, Inc., ("ISO") which is a cooperative organization formed and controlled by its participants for the purpose, among others, of collecting data on the type of claims made, the policy provisions cited for the basis of each claim, the geographic areas in which the claimed damage has occurred, and the actions taken by insurers in response to such claims.

38. The ISO is also instrumental in drafting policy provisions and it prepares interpretations or advice as to the meaning of these provisions.

39. The defendant has not informed its policy holders, including the plaintiffs, of its participation in or of the operations of the ISO.

40. Through the ISO, the defendant has knowledge of the number of claims in northeastern Connecticut that have arisen due to the form of hidden decay in the concrete of the basement walls of residential structures similar to the plaintiffs' home. For the purpose of identification, such claims are referred to as "concrete decay" claims.

41. Through the ISO, the defendant has knowledge that most, if not all, insurers responding to concrete decay claims in residential structures in northeastern Connecticut have attempted to deny coverage on the grounds that the condition is the result of one or more excluded causes, such as:

    i. ordinary wear and tear;

    ii. water beneath the surface of the ground;

   iii.  earth movement and/or settling;

   iv.  homeowner negligence in failing to waterproof the exterior of the concrete; or

   v.  on the grounds that the claim was not presented in a timely manner.

  42.  Through the ISO, the defendant has knowledge of cases such as *Bacewicz v. NGM Insurance*, Connecticut Federal District Court Civil Action No. 3:08-CV-01530 (JCH), where the plaintiffs were awarded judgment against the insurer on a concrete decay claim based on policy language identical to that in the plaintiffs' policy (see para. 19 above).

  43.  Notwithstanding Liberty Mutual's knowledge of the specific policy language alleged in paragraph 19 and the definition of the word "collapse" as it is used in Section I – Property Coverages, Additional Coverages, para. 8, Liberty Mutual gave the insured a knowingly false and misleading reason for the denial of coverage.

  44.  By the defendant's denial of coverage on August 11, 2015 on untenable grounds, it has become a part of or confirmed its participation in an insurance industry wide practice of denying coverage for concrete decay claims, notwithstanding the clear provisions of the Homeowners Policy, including any previous iterations of that policy, to the contrary.

  45.  The defendant, based on the facts alleged in Counts I & II above, has failed to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; as it has arbitrarily refused to pay a claim which a reasonable person would determine is covered by one or more of the series of homeowners insurance policies issued to the plaintiffs.

  46.  The defendant, based in part on the facts alleged in paragraphs 37 through and including 44 above, has regularly been engaged, as part of its general business practice, in

refusing to attempt in good faith to effectuate prompt, fair and equitable settlements of concrete decay claims in which liability has become reasonably clear.

47. By failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear as part of its general business practice, the defendant has engaged in conduct proscribed by the Connecticut Unfair Insurance Practices Act. *Conn. Gen. Stat.* § 38a-816(6)(F).

48. By engaging in this conduct prohibited by the Connecticut Unfair Insurance Practices Act, the defendant has also violated the Connecticut Unfair Trade Practices Act. *Conn. Gen. State.* § 42-110a, *et seq.*

49. As a direct cause of the defendant's unfair and deceptive trade practices, the plaintiffs have suffered loss and damages including loss of moneys owed pursuant to their contract of insurance, as already set forth herein, as well as related court costs and attorney's fees to bring suit to litigate their claim, along with the loss of interest on funds due them under said policy or policies of insurance.

**WHEREFORE**, the plaintiffs, James M. Jang and Anna. S Park, claim the following relief against the defendant, Liberty Mutual Fire Insurance Company, on each count:

1. Just fair and reasonable money damages against the defendant;
2. Pre judgment and post judgment interest pursuant to *Conn. Gen. Stat* § 37-3a and any other applicable statutes;
3. Attorney's fees and costs pursuant to *Conn. Gen. Stat*. §42-110g and any other applicable statute;
4. Punitive damages pursuant to *Conn. Gen. Stat*. §42-110g;
5. Such other and further relief as the court deems just and equitable.

**The Plaintiffs Demand a Trial by Jury on All Counts So Triable.**

                      **PLAINTIFFS,**
                      **JAMES M. JANG and**
                      **ANNA S. PARK**

     By: */s/ Michael D. Parker, Esq.*
          Michael D. Parker, Esq.
          One Monarch Place, Suite 2220
          Springfield, MA 01144
          (413) 736-4101 – *Telephone*
          (413) 736-4582 – *Facsimile*
          mparker@mdparkerlaw.com
          Federal Bar #ct29403